# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **MENLO MUELLER AUSTIN APARTMENTS, LLC,** *Plaintiff* | § § § § | |
| **v.** | § § § | **No. 1:25-CV-01138-DH** |
| **COLONY INSURANCE COMPANY,** *Defendant* | § § § § § | |

## <u>ORDER</u>

Before the Court are Defendant Colony Insurance Company's ("Colony") motion to compel arbitration and to dismiss, or in the alternative, to stay, Dkt. 5, Plaintiff Menlo Mueller Austin Apartments, LLC's ("Menlo") motion to compel mediation, Dkt. 8, Colony's motion to quash discovery and for protective order, Dkt. 20, and all related briefing. After reviewing these filings and the relevant law, the Court will deny Colony's motion to compel arbitration, grant in part and deny in part Menlo's motion to compel mediation, and deny as moot Colony's motion to quash and for protective order.

## I.    BACKGROUND

Menlo purchased a commercial property insurance policy (the "policy") from Colony. Dkt. 6, at 2. After a fire occurred during the policy period, Menlo closed certain units in the covered property for restoration. *Id.* at 2-3. Menlo alleges that while restoration was ongoing, it lost over $1 million in rental revenue. *Id.* at 3. Menlo sought payment from Colony for the entire loss amount pursuant to the policy. *See*

*id.* It now alleges that Colony has not paid the full amount owed under the policy, which Menlo contends covers both the lost rental revenue and "soft costs" including, for example, post-loss advertising and promotional expenses. *Id.*; *see* Dkt. 7, at 7. Menlo sued Colony, asserting a breach-of-contract claim and other causes of action. *See* Dkt. 6, at 3-6.

Colony moved to compel arbitration and to dismiss, arguing that the policy contains a mandatory arbitration provision and that any disputes as to whether the claims are subject to arbitration should be resolved by the arbitrator. Dkt. 5, at 2-6. Colony requests that after compelling arbitration, the Court dismiss this case with prejudice or, alternatively, impose a stay. *Id.* at 6. Menlo responds that the arbitration provision is unenforceable because Menlo never signed it and the parties' use of an appraisal process not contemplated by the agreement demonstrates their intent not to arbitrate. Dkt. 7, at 4-6. Menlo contends that even if the provision is enforceable, its claims are not within the scope of the parties' arbitration agreement. *Id.* at 6-7. Finally, Menlo requests that if the Court compels arbitration, that it stay the case rather than dismiss it. *Id.* at 7-8.

Menlo also moved to compel mediation. Dkt. 8. Colony opposes the motion, asserting primarily that the Court lacks authority to compel mediation because the parties' agreement delegates to the arbitrator the authority to determine all issues of arbitrability. Dkt. 11, at 2-3. Finally, Colony moved to quash pending discovery and stay all further proceedings pending resolution of the motion to compel arbitration. Dkt. 20.

## II.    MOTION TO COMPEL ARBITRATION

### A.    Legal Standard

"Enforcement of an arbitration agreement involves two analytical steps: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute falls within the scope of that agreement." *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018); *see also Kubala v. Supreme Prod. Servs., Inc.*, 830 F. 3d 199, 201 (5th Cir. 2016). Ordinarily, both questions are for the court. *Kubala*, 830 F.3d at 201. But where the arbitration agreement contains a delegation clause giving the arbitrator the primary authority to rule on the arbitrability of a specific claim, the arbitrator decides the second question. *Id.*

Parties may agree to have an arbitrator decide not only the merits of a particular dispute but also "gateway" questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019). An "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010). Thus, "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein*, 586 U.S. at 69 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[T]he FAA requires courts to first 'determine whether a valid arbitration agreement

exists' before granting motions to compel arbitration." *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398 (5th Cir. 2022) (quoting *Henry Schein*, 586 U.S. at 69). Therefore, "courts must decide at the outset whether an enforceable arbitration agreement exists at all. The parties cannot delegate disputes over the very existence of an arbitration agreement." *Newman*, 23 F.4th at 398 (cleaned up).

### B.    Discussion

#### 1.    There is a valid agreement to arbitrate.

##### a.    The arbitration endorsement is enforceable even absent Menlo's signature.

Menlo argues the policy's arbitration endorsement is unenforceable because Menlo's authorized agent did not sign it. Dkt. 7, at 4. Colony responds that Texas law[1] does not require a separate signature for an endorsement to take effect. Dkt. 10, at 2-3. The Court agrees with Colony.

"Under Texas law, endorsements or riders 'attached to an insurance policy when delivered and accepted' are generally considered 'part of the policy itself—even when these additional forms are not independently signed.'" *Signal Ridge Owners Ass'n, Inc. v. Landmark Am. Ins. Co.*, 657 F. Supp. 3d 866, 874 (N.D. Tex. 2023); *see also Callaway Dev. Corp. v. Steadfast Ins. Co.*, No. SA-06-CV-0361 OG (NN), 2007 WL 1032303, at *2 (W.D. Tex. Apr. 3, 2007) (citing *Dunn v. Traders & Gen. Ins. Co.*,

---

[1] Because the insured property is in Texas, Menlo is a Texas-based entity, and the parties both apply Texas law in their briefing, the Court will apply Texas contract law to the issue of endorsement. *See Signal Ridge Owners Ass'n, Inc. v. Landmark Am. Ins. Co.*, 657 F. Supp. 3d 866, 873 (N.D. Tex. 2023) (applying the "most significant relationship" test to determine which state's law to apply in a breach-of-contract case).

287 S.W.2d 682, 687 (Tex. App.—Dallas 1956, writ ref'd n.r.e.)). Here, other than the signature question, there is no dispute that the policy was delivered and accepted and that a binding contract was formed.[2] No party points to any provision specifically requiring a signature on the endorsement. *See Colony Ins. Co. v. Emerald Valley Villas Homeowners' Ass'n, Inc.,* No. 3:19-cv-02487-L-BT, 2021 WL 8014528, at *5-6 (N.D. Tex. Feb. 8, 2021); *cf. Hi Tech Luxury Imps., LLC v. Morgan*, No. 03-19-00021-CV, 2019 WL 1908171, at *2 (Tex. App.—Austin Apr. 30, 2019, no pet.) (finding evidence of the parties' intent to require both signatures where the arbitration agreement included a line stating that the signatures attested to agreement to be legally bound); *Huckaba*, 892 F.3d at 689 (concluding both signatures were required where the arbitration agreement included a statement that, by signing, the parties gave up any right to sue[3]). The arbitration endorsement is included in the policy's forms and endorsements schedule, *see* Dkt. 7-1, at 20, and is attached to the policy, *id.* at 95-96. Further, the declarations page incorporates all forms and endorsements identified in the schedule. *Id.* at 4. Accordingly, the fact that Menlo's registered agent failed to separately sign the arbitration endorsement does not render the agreement unenforceable.

---

[2] "Under Texas law, a binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Emerald Valley*, 2021 WL 8014528, at *3 (quoting *Hi Tech Luxury Imps., LLC v. Morgan*, No. 03-19-00021-CV, 2019 WL 1908171, at *1 (Tex. App.—Austin Apr. 30, 2019, no pet.); *Huckaba*, 892 F.3d at 689).

[3] In fact, there is no statement in the endorsement that by agreeing, any party gives up its right to sue. *See* Dkt. 7-1.

        b.    The parties' participation in appraisal does not render the arbitration endorsement unenforceable.

Menlo next argues that the parties' conduct demonstrates neither Menlo nor Colony believed the arbitration endorsement was enforceable. Dkt. 7, at 5. The arbitration endorsement states that original policy provisions governing appraisal in the event of a disagreement on the property's value, Dkt. 7-1, at 56, are "deleted" and replaced with the arbitration provisions. *Id.* at 95. Menlo alleges that despite the deletion, when a dispute arose regarding the property's value in Fall 2020, the parties followed the original appraisal procedure. Dkt. 7, at 5; *see* Dkt. 7-1, at 56. Menlo asserts the parties' use of the appraisal procedure demonstrates they never agreed to the arbitration endorsement. Dkt. 7, at 5.

Colony responds that it did not waive arbitration by participating in appraisal in Fall 2020. Dkt. 10, at 4. It also argues that since the arbitration endorsement contemplates disputes arising out of appraisal to be submitted to arbitration, Menlo's argument fails as a matter of contract interpretation. *Id.* at 4-5. To the extent it is properly considered at this stage,[4] Colony's contractual-interpretation argument— that, to avoid superfluity, appraisal determines the amount of loss and arbitration governs disputes arising out of appraisal—is unconvincing given that the arbitration endorsement expressly "deletes" the appraisal provision. *See id.* at 5; Dkt. 7-1, at 95. Colony's reading would ignore the deletion and thereby fail to give effect to all provisions. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341

---

[4] *See Kubala*, 830 F.3d at 203 (noting that "issues of contract interpretation do not factor into the first step, because they do not go to contract formation").

S.W.3d 323, 333 (Tex. 2011) ("In identifying [the parties'] intent, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." (internal quotations omitted)).

Still, the Court finds that Colony did not waive arbitration by participating in appraisal. "A party may waive their right to compel arbitration 'by substantially invoking the judicial process to the other party's detriment or prejudice.'" *Rojas v. Ross Dress for Less, Inc.*, No. 1:19-CV-812-RP, 2020 WL 13442036, at *1 (W.D. Tex. Dec. 8, 2020) (quoting *Perry Homes v. Cull*, 258 S.W.3d 580, 589-90 (Tex. 2008)). "'Due to the strong presumption against waiver of arbitration, this hurdle is a high one.'" *Id.* (quoting *Perry*, 258 S.W.3d at 590). Menlo's waiver argument is based on Colony's participation in appraisal. As contemplated by the (now-deleted) policy provision, that process involves both parties paying impartial appraisers to value the loss. Dkt. 7-1, at 56. As the policy's appraisal process does not invoke the judicial process at all, *see* Dkt. 7, at 5, Colony has not waived its right to arbitration by participating.

Finally, even if the parties' participation in appraisal suggested no agreement to arbitrate, Menlo offers no case law in support of the proposition that the parties' Fall 2020 appraisal process should be given effect over the contract's plain terms. On the contrary, Texas law requires the Court to give effect to the parties' intentions as expressed in the contract. *See* Dkt. 7; *El Paso Field Servs., LP v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805 (Tex. 2012) ("In construing a contract, we must ascertain and give effect to the parties' intentions as expressed in the writing itself." (citing *Italian*

7

*Cowboy*, 341 S.W.3d at 333)). Menlo does not overcome the "high hurdle" to demonstrate waiver. *See Rojas*, 2020 WL 13442036, at *1. The arbitration endorsement is enforceable.

2.    The parties' dispute falls outside the scope of the arbitration agreement.

a.    The endorsement does not delegate questions of arbitrability to the arbitrator.

Menlo asserts that even if the arbitration agreement is enforceable, the Court should not compel arbitration because Menlo's claims fall outside the scope of the endorsement. Dkt. 7, at 6. Menlo reads the arbitration endorsement as modifying only the appraisal provision, Dkt. 7-1, at 56. As such, Menlo contends that its claims, which do not arise out of an appraisal,[5] are not subject to arbitration. Dkt. 7, at 6. Colony responds that the arbitration endorsement encompasses all disputes between the parties and modifies the forms applying to Menlo's claims. Dkt. 10, at 6.

As stated above, parties may delegate threshold arbitrability questions to the arbitrator, but only if their agreement does so by "clear and unmistakable" evidence. *Henry Schein*, 586 U.S. at 69. In *Henry Schein*, the Supreme Court found the following clause to properly delegate issues of arbitrability:

> Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of [Schein]), shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association [(AAA)].

---

[5] Menlo explains that there is no disagreement regarding the property or loss value. Rather, it seeks lost revenue and soft costs, which are damages permitted beyond valuation of the property. Dkt. 7, at 6-7.

*Id.* at 66. The Fifth Circuit concluded a similar delegation clause was valid in *Matter of Willis*:

> [T]he Arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the Arbitration Agreement, or to the … arbitrability of any claim or counterclaim.

944 F.3d 577, 583 n.19 (5th Cir. 2019).

The arbitration endorsement in this case does not delegate threshold arbitrability questions by "clear and unmistakable evidence." *Schein*, 586 U.S. at 69. It states, "The Arbitration panel shall have authority and jurisdiction to resolve disputes, if any, regarding whether the matters before them are properly arbitrable." Dkt. 7-1, at 95. Read in isolation, the clause appears to apply to any dispute regarding arbitrability. Read in the context of the entire endorsement, though, the clause describes the panel's authority to resolve arbitrability disputes arising from the appraisal process alone. *See Charter Commc'ns, Inc. v. Prewitt Mgmt., Inc.*, No. 23-50419, 2025 WL 2659157, at *4 (5th Cir. Sep. 17, 2025) (noting that each contract provision "'must be considered in the context of the instrument as a whole'" (quoting *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015))).

As discussed, the arbitration endorsement provides that the policy's "appraisal" provision, Dkt. 7-1, at 56, is "deleted in its entirety and replaced" with an arbitration procedure. *Id.* at 95. It provides,

> If we and you (each a "party") disagree on the value of the property or the amount of the loss, or have any other disagreement or dispute relating to or arising out of appraisal, it is mutually agreed that any and all such disagreements and/or disputes shall be submitted to mandatory

binding arbitration as the sole and exclusive remedy. The terms of this Endorsement shall apply to all such disputes without reference to when they arise, including after expiration or termination of this policy.

*Id.* The endorsement specifically imposes binding arbitration onto disagreements about property value, loss value, or other disputes "relating to or arising out of appraisal," but not to other disputes. *See id.* After detailing the process for selecting the panel, the endorsement goes on to explain that the dispute will be submitted to the panel, which "shall have the authority and jurisdiction to resolve disputes, if any, regarding whether the *matters before them* are properly arbitrable." *Id.*

If the only disputes before the panel under the arbitration endorsement are those related to property value, loss value, or appraisal, the would-be delegation clause awards the panel only the authority to resolve arbitrability with respect to those matters. Unlike the clauses in *Henry Schein* and *Willis*, respectively, the clause in this policy does not delegate questions of arbitrability regarding "*[a]ny* dispute arising under or related to this Agreement" or give the arbitrator the "power to rule on his or her own jurisdiction, including *any* objections with respect to the existence, scope, or validity of the Arbitration Agreement, or to the … arbitrability of *any* claim or counterclaim." *Henry Schein*, 586 U.S. at 66 (emphasis added); *Willis*, 944 F.3d at 583 n.19 (emphasis added). The Court finds that the arbitration endorsement does not clearly and unmistakably delegate questions of arbitrability to the arbitrator. *See Henry Schein*, 586 U.S. at 69. Therefore, the Court next determines whether Menlo's claims are covered by the arbitration endorsement.

10

      b.    The parties' dispute falls outside the scope of the arbitration endorsement.

Menlo's claims fall outside the scope of the arbitration endorsement. First, the arbitration endorsement modifies only the appraisal provision in the overall policy. The endorsement provides that section "G. Loss Conditions, 2. Appraisal" of the Building and Personal Property Coverage Form is "hereby deleted in its entirety and replaced" with a process for arbitrating disagreements relating to "the value of the property or the amount of the loss, or … any other disagreement or dispute relating to or arising out of appraisal[.]" Dkt. 7-1, at 95. By its express terms, the endorsement applies only to those specific disputes. *See Italian Cowboy*, 341 S.W.3d at 333 (beginning analysis of the parties' intent with the contract's express language); *Charter*, 2025 WL 2659157, at *3 (noting that absent ambiguity, contracts are construed as a matter of law, and where the contract's language unambiguously evinces the parties' objective intent, the contract governs).

The Court disagrees with Colony that the phrase "any other agreement or dispute" is not limited by the subsequent words "relating to or arising out of appraisal." *See* Dkts. 10, at 6; 7-1, at 95-96. Initially, Colony offers no case law or canon of construction supporting its interpretation. On its face, the clause contains no language suggesting that the phrase "relating to or arising out of appraisal" is an illustrative, rather than restrictive, qualifier. *See id.* Colony's argument would make more sense if, for example, the phrase read, "any other disagreement or dispute *such as one* relating to or arising out of appraisal." But as there is no language to suggest appraisal-related disputes are only one category of "other disagreement[s] or

11

dispute[s]" subject to arbitration under the endorsement, the Court finds "relating to or arising out of appraisal" modifies "any other disagreement or dispute" such that the arbitration clause is limited only to those categories of disputes specifically delineated in the arbitration endorsement. *Cf. Lockhart v. United States*, 577 U.S. 347, 351 (2016) (stating that under the "rule of the last antecedent," "a limiting clause or phrase … should ordinarily be read as modifying only the noun or phrase that it immediately follows" (internal quotation marks omitted)).

Colony's argument that use of "any and all such disagreements and/or disputes" "confirms the drafters' intent to capture all controversies" is not well taken, given that the references to disagreements and disputes within the arbitration endorsement refer specifically to appraisal-related disagreements and disputes. *See* Dkt. 10, at 6. The reference to "all such disagreements and/or disputes" appears in the same sentence as "any other disagreement or dispute relating to or arising out of appraisal" and clearly refers to appraisal-related conflicts. *See* Dkt. 7-1, at 95; *Charter*, 2025 WL 2659157, at *4-5 (concluding that because each mention of "permit" within the parties' agreement referred to permits issued by cities, "permit" as used in the agreement meant a city-issued permit). So too does the reference to "such disputes" in the sentence that immediately follows. *Id.* And given that the reference to "dispute(s)" in the third paragraph of the arbitration endorsement refers to "[t]he dispute" as defined in the first paragraph, the Court again concludes that the agreement reaches only appraisal-related disputes. *Id.* Finally, Colony fails to identify—and the Court cannot discern—any superfluity that would result from the

12

conclusion that "relating to or arising out of appraisal" modifies "any other disagreement or dispute." *See* Dkt. 10, at 6.

Second, Menlo's claims are unrelated to appraisal and therefore fall outside the scope of the endorsement. As Menlo points out, the parties do not dispute the appraisal of the property's value or the loss from the fire. Dkt. 7, at 6; *see* Dkt. 6. Menlo seeks (1) loss of rental revenue under the Business Income Coverage Form ("BICF") and (2) soft costs under the Protection Plus Property Program ("PPPP"). Dkts. 6, at 3; 7, at 7; 7-1, at 71-72, 73-75. Colony responds that because BICF and PPPP are part of the Building and Personal Property Coverage Form, which is modified by the arbitration endorsement, the endorsement applies to Menlo's claims under the BICF and PPPP. Dkt. 10, at 5-6. Colony also argues that though Menlo seeks loss of rental revenue and soft costs, its claims are nonetheless "all centered on the parties' dispute regarding the amount of the loss." *Id.* at 7. The Court addresses each argument in turn.

Regardless of whether the BICF and PPPP modify insurance provided under the Building and Personal Property Coverage Form, as discussed, the arbitration endorsement deletes only Section G of that form and applies only to disagreements related to property value, loss value, or appraisal. *See* Dkt. 7-1, at 95. Just because Menlo's claims arise from other provisions in the Building and Personal Property Coverage Form does not mean they relate to property value, loss value, or appraisal. Finally, the Court is unconvinced Menlo's claims relate to the amount of the loss. Menlo's claims challenge Colony's failure to pay additional costs—that is, lost

business income and soft costs—that it alleges are covered by the policy over and above the loss value from the fire itself. Dkt. 6, at 3-6. *Emerald Valley* does not help Colony here, since the parties to that case disputed the scope of the hailstorm damage and the cost to repair it. *See* 2021 WL 8014528, at *1. Unlike in *Emerald Valley*, the parties here disagree on additional costs unrelated to the property or its repair. *See* Dkt. 6.

Because the arbitration endorsement applies only to appraisal-related disputes and Menlo's claims are unrelated to appraisal, the motion to compel arbitration will be denied.[6]

### III.    MOTION TO COMPEL MEDIATION

Menlo asks that the Court order the parties to attend mediation in this case within 30 days because there are "limited issues to be resolved among the parties and … substantial negotiations … have already occurred." Dkt. 8, at 1-2. Colony opposes the motion on the grounds that the policy delegates questions of arbitrability to the arbitrator, and compelling mediation would "involve a judicial determination of arbitrability." Dkt. 11, at 2-3. Colony also stated in its response that mediation was premature given that the parties had not yet begun discovery. *Id.* at 3-4.

The Court has already ordered Menlo and Colony to prepare a report on alternative dispute resolution ("ADR") in compliance with Local Rule CV-88. *See* Dkt. 18. Though that deadline has passed, the Court sees no reason why the parties to this

---

[6] In its motion to quash discovery and for protective order, Dkt. 20, Colony asks that the Court quash pending discovery and stay further proceedings pending resolution of the motion to compel arbitration. In accordance with the above discussion, the Court will deny as moot Colony's motion to quash and for protective order, Dkt. 20.

14

case should be exempt from the Rule's requirement that they complete ADR, nor why Colony should not be permitted to work with Menlo to agree upon a method, provider, date, and method of compensation. *See* W.D. Tex. Local Rule CV-88(a). And having determined that the Court may decide questions of arbitrability, those questions present no bar to ADR in this case. Yet at least as of the time of filing, Colony suggested it could not engage in meaningful settlement talks given that the parties were in the early stages of discovery. Dkt. 11, at 3. The parties now expect to complete discovery in late August 2026. *See* Dkt. 18.

The Court will grant in part and deny in part the motion. In order to facilitate meaningful settlement talks and provide opportunities for efficient resolution of this case, the Court will order the parties to agree upon a method of ADR, an ADR provider, the method of compensating the provider, and a date for completing the ADR proceeding in compliance with Rule CV-88(a) on or before 30 days after the filing of this Order. The Court will further order the parties to conclude ADR and file a final ADR report in compliance with Rule CV-88(g) on or before August 9, 2026, which is one month before the parties' dispositive motions deadline of September 9, 2026. *See* Dkt. 18.

**IV.   ORDER**

In accordance with the above discussion, **IT IS ORDERED** that Colony's motion to compel arbitration, Dkt. 5, is **DENIED**.

**IT IS FURTHER ORDERED** that Colony's motion to quash discovery and for protective order, Dkt. 20, is **DENIED** as **MOOT**.

15

**IT IS FINALLY ORDERED** that Menlo's motion to compel mediation, Dkt. 8, is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the parties are **ORDERED** to

(1) agree upon a method of ADR, an ADR provider, the method of compensating the provider, and a date for completing the ADR proceeding in compliance with Rule CV-88(a) on or before 30 days after the filing of this Order; and

(2) conclude ADR and file a final ADR report in compliance with Rule CV-88(g) on or before August 9, 2026.

SIGNED March 12, 2026.

 

_____

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE

16